Filed 1/14/25  P. v. Dawson CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H051092 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1348958) |
| v. | |
| KENNETH DEAN DAWSON, | |
| Defendant and Appellant. | |

In 2014, defendant Kenneth Dean Dawson was convicted by plea of three counts of second degree robbery (Pen. Code,[1] §§ 211, 212.5, subd. (c)) and admitted 12 prior strike convictions (§§ 667, subds. (b)–(i), 1170.12), three serious prior felony convictions (§ 667, subd. (a)), and five prior convictions that resulted in a prison term (§ 667.5, subd. (b)).  At sentencing, the trial court struck 11 of the 12 prior strike convictions and sentenced Dawson to 20 years in state prison.

In 2023, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) sent a letter to the trial court recommending recall of Dawson's sentence and resentencing pursuant to section 1172.1, subdivision (a)(1).  In connection with his resentencing, Dawson requested that at least two of the section 667, subdivision

---

[1] All further unspecified statutory references are to the Penal Code.

(a) (section 667(a)) enhancements be stricken pursuant to recent amendments to section 1385.  The trial court recalled Dawson's sentence, struck the section 667.5, subdivision (b) (section 667.5(b)) enhancement, reduced Dawson's sentence by one year, and denied his request to strike the section 667(a) enhancements under section 1385.

On appeal, Dawson contends that the trial court abused its discretion in denying his request to strike the section 667(a) enhancements because the evidence demonstrates he does not pose a danger to the public, and the court relied on an impermissible factor in declining to strike the enhancements.

For the reasons stated below, we decide the trial court did not abuse its discretion and affirm the judgment.

## I.  FACTS AND PROCEDURAL BACKGROUND[2]

### A.  *Facts and Charges*

On January 25, 2013, Dawson, who was then 53 years old and on parole, entered a bank in San Jose wearing a hat and sunglasses and holding a rag over his face.  He ran into some of the standing signs in the bank while approaching the bank tellers and smelled of alcohol.  He yelled multiple times that he had a friend outside who had a gun and would start shooting and demanded the tellers give him " 'all the money.' "  Dawson "grabbed at his pants" and witnesses thought he might have been armed.  He handed a plastic bag to three bank tellers in succession and walked out with $2,494.  Dawson attempted to flee in a taxi, but police stopped the vehicle and apprehended him.

A person working at an auto care shop near the bank reported to the police that, immediately before the robbery, Dawson had asked him for gloves and a plastic bag.  The employee provided Dawson a pair of latex gloves but did not give him a plastic bag.  He observed Dawson walk over to a taxi and begin speaking with its driver.  The taxi driver reported that he had been dispatched to pick up a customer at the auto care shop.  Dawson

_____

[2] These facts are drawn from the summary of the offense provided in the probation officer's report prepared for Dawson's sentencing.

2

asked the driver to wait for him at the auto care shop because Dawson's "wife was across the street." The driver reported that Dawson walked away and returned approximately three to four minutes later.

On May 7, 2014, the Santa Clara County District Attorney filed a first amended complaint charging Dawson with three counts of robbery in the second degree (§§ 211, 212.5, subd. (c)). The complaint also alleged that Dawson had been previously convicted of personal discharge of a firearm with gross negligence (§ 246.3), robbery (§§ 211, 212.5, subd. (b)), attempted robbery (§§ 211, subd. (b), 212.5, subd. (b), 664), and bank robbery (former 18 U.S.C. § 4010B), each of which constituted a prior serious or violent felony pursuant to sections 667, subdivisions (b) through (i) and 1170.12. The complaint further alleged that Dawson's prior convictions for personal discharge of a firearm with gross negligence (§ 246.3), robbery (§ 211), and bank robbery (former 18 U.S.C. § 4010B) constituted serious felonies under section 667(a). In addition, the complaint alleged that Dawson had served prison terms for convictions for possession of stolen property (§ 496, subd. (a)), second degree burglary (§§ 459, 460, subd. (b)), willful discharge of a firearm in negligent manner (§ 246.3), robbery (§ 211), and bank robbery (former 18 U.S.C. § 4010B), pursuant to section 667.5(b).

*B. Prior Criminal History*

In 1978, Dawson was sentenced to four to six years in prison for bank robbery (former 18 U.S.C. § 4010B), but due to his age—he was 19 years old at the time—he "was found eligible for handling under the Federal Youth Corrections Act" and released on March 19, 1982.

In 1983, Dawson was sentenced to 18 years and four months in state prison for robberies and attempted robberies committed on the following days in 1982: July 25, August 11, August 15, August 17, August 21, August 23, August 26, and August 27. He was released on parole on May 1, 1993.

On October 14, 1993, Dawson was sentenced to eight years in state prison for personal discharge of firearm with gross negligence (§ 246.3), robbery (§ 212.5, subd. (b)), and attempted robbery (§§ 212.5, subd. (b), 664) for crimes committed in July 1993. He was released on parole on June 4, 1997.

Dawson "incurred approximately 19 [p]arole violations between 1998 and 2013," and his parole agent stated that Dawson's adjustment while on parole "was poor" and that Dawson "had several positive drug tests and had difficulty remaining in compliance."

### C. Procedural Background

#### 1. Mental Health Evaluations, Plea, and Original Sentence

Between July and December 2013, Dawson underwent five mental health evaluations to determine whether he suffered from any mental illness and whether, because of any such mental illness, he was unable to understand the nature of the case and/or unable to assist his attorney in his defense. In December 2013, the South Bay Conditional Release Program recommended that Dawson be committed to the Department of State Hospitals for placement in a state hospital as incompetent to stand trial. The Department of State Hospitals subsequently certified Dawson as being competent to stand trial.

On September 11, 2014, Dawson waived his rights to a preliminary hearing, a jury trial, and a court trial, and pleaded no contest to the three counts of robbery in the second degree and admitted the 12 strike priors, the three serious felony priors, and the five prison priors. The trial court indicated that, pending review of the probation report and a *Romero*[3] hearing, it would dismiss all but one of the alleged strike priors and would sentence Dawson to a term of 20 years.

The probation report characterized Dawson's strike prior offenses as "extremely violent and callous in nature," noting that he "robbed numerous businesses at gun point

---

[3] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

4

and shot rounds at the police while evading arrest" and "continues to exhibit the same criminal conduct over 35 years later." It identified multiple aggravating factors in its sentencing evaluation for the 2013 robbery, including that the manner in which Dawson carried out the robbery indicated planning ("the defendant was in disguise and had a getaway vehicle arranged"), and that Dawson engaged in violent conduct, had numerous prior convictions as an adult, served a prior prison term, was on parole when he committed the robbery, and had violated parole 19 times.

On January 13, 2015, the trial court held a *Romero* hearing, noting it had reviewed and considered the probation report, Dawson's motion, and the People's opposition. After hearing arguments by defense counsel and the district attorney, the trial court granted the motion in part, striking 11 of the 12 strike priors over the district attorney's objection and retaining the most recent strike, personal discharge of a firearm with gross negligence (§ 246.3). The court also struck four of the five prison priors. The court sentenced Dawson to 20 years in prison, consisting of four years (the mitigated term of two years, doubled pursuant to the Three Strikes law) for each of the charged counts of robbery in the second degree, to be served concurrently, consecutive to 15 years for the three prior serious felony enhancements (five years for each prior), and one year for the remaining prior prison term enhancement.

### 2. Incarceration

Between 2019 and 2021 and while incarcerated, Dawson incurred five rules violation reports including two reports of "overfamiliarity" and one of disobeying an order. Four of these rules violations were classified as "[s]erious" and three of them related to unsolicited and unwanted communications with female instructors at the correctional facility and with an ex-girlfriend.

Dawson received counseling for additional rules violations occurring between 2017 and 2020, several of which involved disobeying orders. One of the incidents for which Dawson received counseling involved his "attempt to again become overfamiliar

5

with" a prison employee after having been counseled against such behavior six days before and despite having stated that he would cease contact with the employee. The investigation into this incident "indicated Dawson [was] a threat to staff or inmates, or the safety and security of the institution," which led to the transfer of Dawson to another institution. He received counseling for additional instances of unwanted and unsolicited communications with others, including a university employee working at a Prison Arts Collective and a retired police detective.

Dawson was commended for his administration of cardiopulmonary resuscitation (CPR) to an unconscious inmate in March 2020.

3. Resentencing

In or around 2021 and/or early 2022, Dawson submitted multiple filings seeking resentencing pursuant to various provisions of and amendments to the Penal Code, including amendments effectuated by the passage of Senate Bill No. 81 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) (Senate Bill 81) and Senate Bill No. 483 (2021–2022 Reg. Sess.) (Senate Bill 483). On February 22, 2022, the trial court issued an order stating that Dawson qualified for relief under former section 1171.1[4] and appointed counsel to represent him.

---

[4] Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) amended section 667.5 to eliminate prior prison term sentence enhancements for all crimes except sexually violent offenses. (Stats. 2019, ch. 590, § 1.) Senate Bill 483 then added what was then section 1171.1 to make this change retroactive. (Stats. 2021, ch. 728, § 3.) Effective June 30, 2022, the Legislature amended section 1171.1 to redesignate it as section 1172.75, with no change to the text of the statute. (Stats. 2022, ch. 58, § 12.) We hereinafter refer to the current version of the provision as section 1172.75.

Section 1172.75, subdivision (a) provides in pertinent part, that "[a]ny sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of [s]ection 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of [s]ection 6600 of the Welfare and Institutions Code is legally invalid." The sentencing court must recall the sentence and resentence the individual, applying current law. (*Id.*, subds. (c), (d)(2).)

6

On March 13, 2023,[5] the Secretary of the CDCR (Secretary) filed a letter with the trial court pursuant to section 1172.1, subdivision (a)(1) (section 1172.1(a)(1)) recommending recall of Dawson's sentence and resentencing due to a January 1, 2019 amendment to section 1385 that authorized courts to strike enhancements imposed for prior serious felony convictions.[6]  The Secretary attached to the letter a cumulative case summary and evaluation of Dawson setting forth his criminal history, including a summary of the present offense, as well as his prison disciplinary record, education, and self-help activities.

On March 13, the trial court appointed counsel for Dawson and ordered that the hearing to address the Secretary's letter authorizing recall and resentencing pursuant to section 1172.1(a)(1) be joined with the pending hearing on recall and resentencing pursuant to section 1172.75.

In the People's resentencing brief, the district attorney stated that, pursuant to section 1172.75, the trial court should recall Dawson's sentence and reduce it by one year based on the now-invalid section 667.5(b) prison prior enhancement.  However, the district attorney opposed the striking of the section 667(a) enhancements.  He argued that, because Dawson's "criminal history is long, violent, and—but for his previous stints in custody—uninterrupted since the late 1970s," and because Dawson "invariably committed new serious and/or violent felonies while on parole for other serious and/or violent felonies," the court should not strike the enhancements.  The district attorney further argued Dawson's rules violations while incarcerated indicated that Dawson's "risk for future serious and violent criminal behavior" had not declined during his incarceration.  In addition, the district attorney observed that Dawson's sentence was

_____

[5] Unless otherwise indicated, all further dates were in 2023.
[6] Effective January 1, 2019, the Legislature amended section 1385 to remove what had been subdivision (b), which stated that the provision "does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under [s]ection 667." (Stats. 2018, ch. 1013, § 2.)

7

"already significantly lower than what it might have been" due to the original sentencing court striking 11 of the 12 strike priors and sentencing Dawson to concurrent, rather than consecutive, terms for the three counts of second degree robbery in the instant offense. He argued that such initial leniency "weighs heavily against any further reduction" in Dawson's sentence other than the one-year mandatory reduction for the section 667.5(b) enhancement.

Dawson filed a request for resentencing and asked the trial court to strike the now-invalid one-year enhancement for his section 667.5(b) prison prior. In addition, he argued that multiple mitigating factors weighed in favor of striking the enhancements for his section 667(a) serious felony priors: the imposition of multiple enhancements; the possibility that application of the enhancements could result in a sentence exceeding 20 years; the impact of his mental illness, including substance use disorder, on his offenses; his conduct while incarcerated, including his administration of "life saving" CPR to a fellow inmate; the age of his convictions; his acceptance into a treatment facility upon his release; and his age.

On April 12, the trial court recalled Dawson's sentence and resentenced him. The court struck as invalid the one-year prison prior enhancement imposed pursuant to section 667.5(b). However, the court found the three section 667(a) five-year serious felony enhancements were "justified and in the interest of justice" and denied Dawson's request to strike them. The court determined that, "after giving great weight and consideration to the mitigating circumstances" raised by defense counsel, such mitigating factors were "substantially outweighed by the substantial likelihood that the dismissal of the [section 667(a)] enhancements would endanger public safety."

The trial court based its decision on multiple aggravating factors: Dawson's extensive criminal history, which "involve[d] the same behavior exhibited throughout his entire adult criminal life"; his numerous parole violations, including offenses Dawson committed—and for which he was convicted—while on parole, "shortly after being

8

released from prison"; his "numerous rules violations" while incarcerated; his "current offense," character, and future prospects; and his admission "that he has used alcohol or drugs prior to committing a robbery to bolster his courage to commit the crime," which Dawson did not deny. The court also observed that the original sentencing court's sentence "was disparagingly lenient given his extensive record," and opined that this, too, "weigh[ed] against any further reduction in the sentence apart from the one-year reduction mandated by Penal Code [s]ection 1172.75." Relying on these factors, the court concluded that imposition of the three section 667(a) enhancements was "justified and in the interest of justice" and denied Dawson's request to strike them. The court sentenced Dawson to 19 years.

Dawson timely appealed.

## II. DISCUSSION

Dawson argues that the trial court abused its discretion in denying his request to strike the section 667(a) enhancements because doing so would not have endangered public safety. Dawson relies on the details of his criminal history that relate to mitigating factors enumerated in section 1385—in particular, the imposition of multiple enhancements and the age of the conviction on which the enhancements are based—which he contends should be given " 'great weight,' " as well as his assertions that he has not used a firearm in the commission of a crime since 1993, has not engaged in "any act involving violence or force or even the threat of violence or force" and has not used or sought to use alcohol since 2013, and has no history of "difficulty in his relationships either with correctional staff or other inmates." In addition, Dawson argues that the trial court relied on an impermissible factor—its "personal animosity toward the sentence originally imposed"—in reaching its conclusion that striking the section 667(a) enhancements would endanger public safety.

The Attorney General contends that the trial court did not abuse its discretion and asserts that substantial evidence of aggravating factors—Dawson's long and violent

9

criminal history and poor performance on parole, including the commission of additional serious felonies while on parole—"neutralized" any weight that should be given to the mitigating factors. He argues that Dawson's abstention from violence and alcohol while incarcerated "is immaterial to the danger he poses to the public when not imprisoned." The Attorney General maintains that the trial court's "offhand comment" regarding the purported leniency of the original sentence "does not eviscerate the substantial evidence of [Dawson]'s danger to the public."

### A. Applicable Law

#### 1. Section 1172.1

Section 1172.1(a)(1) authorizes the trial court "at any time upon the recommendation of the secretary" to "recall the sentence and commitment previously ordered and resentence" a defendant "in the same manner as if they had not previously been sentenced."

When considering resentencing, "[c]ourts should consider [s]ection 1385 of the Penal Code, postconviction factors, or any other evidence that continued incarceration is no longer in the interests of justice." (Stats. 2023, ch. 446, § 1, subd. (b).) Section 1172.1 enumerates the following nonexhaustive list of postconviction factors courts must consider: "the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." (*Id.*, subd. (a)(5).)

#### 2. Section 1385

Senate Bill 81, effective January 1, 2022, added subdivision (c) to section 1385 (section 1385(c)) through which the Legislature gave "greater definition to the concept [of 'furtherance of justice'] by enumerating certain mitigating circumstances" that the trial court must " 'weigh[] greatly' " (*People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1090

10

(*Ortiz*)) when exercising its discretion in determining " ' "whether to strike enhancements from a defendant's sentence." ' " (*Id*. at p. 1093; *People v. Ponder* (2023) 96 Cal.App.5th 1042, 1052 (*Ponder*).)

Section 1385 provides, "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." (*Id*., subd. (c)(1).) "(2) In exercising its discretion under [subdivision (c)], the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in [the subparagraphs to subdivision (c)(2)] are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Id*., subd. (c)(2).)

As applicable here, the mitigating circumstances set forth in the provision include: "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed" (§ 1385, subd. (c)(2)(B)); and "The enhancement is based on a prior conviction that is over five years old." (*Id*., subd. (c)(2)(H).) Despite the use of the term "shall" in section 1385, subdivision (c)(2)(B), resentencing courts retain their discretion to grant or deny a request to strike one or more enhancements. In *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*), the California Supreme Court agreed with the decision in *Ortiz* that "the specification of mandatory factors did not displace the trial court's obligation to exercise discretion in assessing whether dismissal is 'in furtherance of justice.' " (*Ortiz*, *supra*, 87 Cal.App.5th at p. 1093; *Walker*, at p. 1029 ["We conclude that the plain language of section 1385, subdivision (c)(2) contemplates that a trial court will exercise its sentencing discretion in

11

a manner consistent with the *Ortiz* court's understanding."]; *id*. at p. 1035; see also *People v. Anderson* (2023) 88 Cal.App.5th 233, 239–240 (*Anderson*).)

The Supreme Court concluded in *Walker* that, "[s]pecifically, absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present. [Citation.] In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Walker*, *supra*, 16 Cal.5th at p. 1029; see also *id*. at p. 1036; *Anderson*, *supra*, 88 Cal.App.5th at p. 239 [noting that the plain language of section 1385(c) "establishes[ that] the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal"].)

*B. Standard of Review*

We review for abuse of discretion a trial court's decision not to strike a prior serious and/or violent felony enhancement under section 1385. (See *People v. Mendoza* (2023) 88 Cal.App.5th 287, 298 (*Mendoza*); *People v. Carmony* (2004) 33 Cal.4th 367, 375 (*Carmony*).)

"The abuse of discretion standard is highly deferential." (*Mendoza*, *supra*, 88 Cal.App.5th at p. 298.) Two principles guide our review. "First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' "

12

(*Carmony*, *supra*, 33 Cal.4th at pp. 376–377; *Mendoza*, at p. 298.) "Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' " (*Carmony*, at p. 377.) In other words, "a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid.*)

### C. Analysis

Dawson maintains that the trial court abused its discretion on two grounds. First, he contends that, despite his "extensive criminal record," he does not pose a danger to the public if released earlier after the striking of one or more of the section 667(a) enhancements. He argues that the offenses on which the section 667(a) enhancements were based occurred "almost thirty years" before his resentencing, the 2013 robberies in the instant matter were predicated on fear—rather than use—of a firearm, and he has not committed any crimes or violent rules violations since he has been incarcerated. He asserts that the record does not "establish that granting the requested relief, dismissing one or more of his section 667[(a)] enhancements, would likely 'result in physical injury or other serious danger to others.' "

We decide the trial court did not abuse its discretion in rejecting this conclusion. Even though Dawson has not committed a serious or violent felony while incarcerated, his prior and current offenses are serious and/or violent felonies—bank robbery, robbery, and attempted robbery—and in each case, including the instant offense, involved either the use or the threatened use of a firearm. Moreover, Dawson's criminal and parole history collectively demonstrate a strong tendency to violate parole and commit further serious and/or violent offenses when he is not incarcerated. Indeed, based on his probation report and the cumulative case summary and evaluation report attached to the Secretary's letter, since at least 1993, Dawson has regularly committed parole violations

13

or further criminal offenses within anywhere from a handful of days to two years after his release from incarceration.

In addition, while we acknowledge the positive value of Dawson's administration of lifesaving CPR to a fellow inmate, his numerous rules violations while incarcerated, including violations the CDCR classified as "serious" and at least one incident that necessitated his transfer due to the threat Dawson posed to others, indicate that Dawson also has disobeyed orders and rules and has engaged in unsolicited and unwanted contact with others in his community. This evidence in the record undermines his argument on appeal that he has no history of "difficulty in his relationships [] with correctional staff."

We perceive no legal error in the trial court's consideration of the mitigating circumstance enumerated in section 1385(c) and the aggravating factors in Dawson's record. The court stated that it found, "after giving great weight and consideration to the mitigating circumstances and the Penal Code [section] 1385[, subdivision] (c)(2) factors in subparagraphs ([A]) through ([I]) that were argued by Mr. Dawson, they are substantially outweighed by the substantial likelihood that the dismissal of the enhancements would endanger public safety." It continued: "Here, Mr. Dawson's continued incarceration is in the interest of justice. His criminal history is long, violent, and, but for his previous stints in custody, almost uninterrupted since the 1970s. [¶] Mr. Dawson's extensive criminal history, which is summarized in the People's papers, by itself is evidence of a continued need for Mr. Dawson's incarceration. [¶] He has committed many new and/or serious violent felonies while he was on parole for other serious and violent felonies. [¶] The postconviction factors, including his numerous rules violations, weigh in favor of continued incarceration." We conclude that the trial court reasonably considered and relied upon "substantial, relevant, and credible evidence of aggravating factors to neutralize the 'great weight' of the mitigating circumstances." (*Walker*, *supra*, 16 Cal.5th at p. 1036; see also *Ponder*, *supra*, 96 Cal.App.5th at pp. 1052–1053; *Ortiz*, *supra*, 87 Cal.App.5th at p. 1099.)

14

Dawson also argues that the trial court considered an impermissible factor in declining to strike his section 667(a) enhancements by taking into account the original sentencing court's earlier decision to strike 11 of Dawson's 12 strike priors. In support, he relies on *People v. Gonzalez* (2024) 103 Cal.App.5th 215 (*Gonzalez*).

In *Gonzalez*, the defendant argued that the trial court committed error by "focusing on whether [Gonzalez] 'presently' and 'currently' endangered public safety rather than assessing whether, looking forward, public safety would be endangered due to an earlier release from prison (i.e., in 50 years to life rather than in 75 years to life) if the enhancement was dismissed." (*Gonzalez, supra*, 103 Cal.App.5th at p. 224.) The *Gonzalez* court determined "the trial court erred because it considered *only* whether Gonzalez *currently* posed a danger to the public when assessing if a dismissal of the firearm enhancement would 'endanger public safety.' " (*Id*. at p. 230, some italics added.) The trial court had "specifically explained, 'I think presently [Gonzalez] does represent a danger to society, *and for that reason* . . . I do think it is appropriate for the Court to impose an additional 25 years to life for the gun use enhancement.' " (*Id*. at p. 231.) Because the trial court in *Gonzalez* relied on that single factor for its decision, and "gave no indication of how it would rule if it did not limit its inquiry to Gonzalez's current dangerousness" (*ibid*.), the Court of Appeal concluded that the trial court's error was prejudicial. (*Id*. at p. 232.)

In contrast to the facts of *Gonzalez*, here the trial court considered Dawson's criminal, parole, and incarceration history, as well as his current offense, his character, and his prospects, "after giving great weight and consideration to the mitigating circumstances" raised by defense counsel, before concluding that the mitigating factors were "substantially outweighed by the substantial likelihood that the dismissal of the enhancements would endanger public safety." Although the court also considered the original sentencing court's "lenient" sentence, the court referenced this factor only once during the resentencing hearing and focused its attention on the other enumerated factors,

including Dawson's extensive criminal history, parole violations, rules violations while incarcerated, his character, and his potential for recidivism.

The trial court's detailed explanation of its grounds for denying Dawson's request, discussed in greater detail *ante*, indicate that it considered numerous factors, both mitigating and aggravating, in reaching its conclusion, and did not rely solely or predominantly on its perception of the original sentence. We determine that any error made by the trial court in considering the "leniency" of Dawson's original sentence was harmless. (See *People v. Mack* (1986) 178 Cal.App.3d 1026, 1033–1034; see also *Gonzalez*, *supra*, 103 Cal.App.5th at pp. 231–232.)

### III. DISPOSITION

The judgment is affirmed.

_____
                                 Danner, J.

WE CONCUR:

_____
Greenwood, P. J.

_____
Bromberg, J.

**H051092**
***People v. Dawson***